IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: PARAGARD IUD | : | MDL DOCKET NO. 2974 |
| PRODUCTS LIABILITY | : | 1:20-md-02974-LMM |
| LITIGATION | : | |
| | : | |
| This document relates to: | : | CIVIL ACTION NOs.: |
| Pauline Rickard | : | 1:21-cv-03861-LMM |

## ORDER - TEVA DEFENDANTS' OMNIBUS MOTIONS IN LIMINE

I.      **Defendant moves to exclude references to Israel or to Teva as an Israeli company**

Defendant moves to preclude Plaintiff from making references to Teva Ltd., referring to Teva as an Israeli business, or making any statements regarding Israel or Israeli businesses during trial. Defendant contends that references to Israel, or Teva as an Israeli business, are irrelevant to this case and would serve only to appeal to potential biases or stereotypes about foreign entities or citizens in general or Israel in particular, distracting from the issues and potentially impacting jury impartiality.

In response, Plaintiff argues that Teva policies or procedures concerning pharmacovigilance operations or activities that arose from, at least in part, Teva Pharmaceuticals Industries, Ltd., will require discussion of this entity. Plaintiff also alleges that many of the relevant facts in this case come at the direction of one or more individuals physically situated in Israel and that email addresses noted on exhibits reference an Israeli email suffix. Because of this, Plaintiff

argues that it not reasonable to suggest that Plaintiff is to avoid the entire topic of Israel. Plaintiff claims she intends only to reference, mention, or discuss Teva Pharmaceuticals Industries, Ltd. and/or Israel as it relates to its involvement with Paragard—the product at issue and which Teva Pharmaceuticals Industries, Ltd., sold to Defendant CooperSurgical.

The Court agrees with Defendant that there is to be no argument seeking to incite the jury or prejudice them against Defendant because of a connection to Israel, but the Court declines to go as far as Defendant suggests. The Court also agrees with Plaintiff that certain information regarding Teva Ltd. and the location of various witnesses may be relevant at trial. Specifically, the Court does not find that it is necessary to scrub all documents as to any mention of Israel to hide the location or employer of various witnesses from the jury. In sum, the Court **GRANTS in PART** Defendant's Motion to the extent it would prevent any argument related to Israel to incite the jury against them based on any connection to this country. The Court otherwise **DEFERS** ruling on references to Israel but generally finds that innocuous references to where an employee works or where documents were obtained does not on its face violate Rule 403.

## II.     Defendant's Motion to limit the in-court use of Paragard exemplars

Defendant moves to prevent Plaintiff from displaying an exemplar of Paragard during trial to show the jury what it looks like and to explain how it functions or allowing the jury to handle any Paragard exemplar or take one to the

jury room during deliberations. Defendant also moves the Court to prohibit counsel and witnesses from attempting to manipulate the exemplar to cause it to break in the jury's presence. In response, Plaintiff claims she intends to use the Paragard as a demonstrative and to specify the pertinent component parts. Plaintiff does not claim that she intends to conduct any sort of breakage experiment in front of the jury.

The Court finds that an exemplar Paragard can be used in front of the jury to show them what it looks like and how it works. The Court also finds that Plaintiff, counsel, and any witness can hold the exemplar and point to component parts. The Court agrees with Defendant that the exemplar will not go back with the jury and that it would be improper for any witness to handle the exemplar in any manner that would intentionally cause it to break. It would be unclear as to how any such conditions would replicate the conditions of breakage at issue in this case. As such, Defendant's Motion is **GRANTED in PART and DENIED in PART** as explained above.

III.    **Defendant's Motion to exclude generalized references to other lawsuits**

Although Defendant admits that there may be certain circumstances where the parties need to refer to other litigation involving Paragard in the broader context, Defendant still moves to exclude generalized references to the number of Paragard lawsuits filed or the facts of other lawsuits. Defendant contends that

such references serve no legitimate purpose and carry a substantial risk of prejudice and confusion.

In response, Plaintiff argues that Defendant's Motion is inappropriate and premature. Although Plaintiff agrees not to mention or discuss the case-specific allegations contained in other plaintiffs' complaints, Plaintiff argues that she should be allowed to reference or mention other lawsuits should Defendant suggest that Plaintiff's experience with the Paragard product is unique or isolated. Plaintiff also seeks to use this information to rebut Defendant's claims that Paragard breakage claims are lawyer-driven and not reflective of an actual problem with their product breaking inside women's bodies.

The Court agrees with Plaintiff. Although there are certainly categories of evidence regarding other lawsuits that would go beyond what would be admissible, the Court cannot say that all such evidence should be excluded. In fact, both Plaintiff's response and Defendant's Motion point to several such categories that would be potentially admissible at trial. It would be unfair to only allow Defendant to use the categories of evidence it seeks to use at trial and prevent Plaintiff from using other similar evidence to rebut. As such, the Court **DEFERS** ruling on this issue and will address the specific evidence in the context of trial. Additionally, to the extent that there are specific hearsay objections, the Court will also handle those at trial.

**IV.     Defendant's Motion to preclude Plaintiff from eliciting testimony from her experts that merely parrots others' out-of-**

4

**court statements or amounts to a narrative summary of evidence**

Defendant moves to prevent Plaintiff from using her expert witnesses for the narrative admission of corporate evidence by asking them, under the guise of Rule 703, to read company documents to the jury and then interpret them for the purpose of supporting their opinions. In response, Plaintiff contends that it is proper for experts to review, consider, and ultimately opine on other individuals' out-of-court statements and various internal and FDA documents. Plaintiff also alleges that her experts do not merely provide a narrative summary of the evidence. Instead, the experts specifically testify to Defendant's knowledge of breakage, as identified through the lens of corporate communications amongst employees, and the regulatory implications of said knowledge coupled with a failure to act.

The Court agrees with the general concept that an expert may testify as to a review of internal corporate documents and out-of-court statements for the purpose of explaining the basis for his or her opinions. This may also involve explaining or summarizing voluminous materials. The Court finds nothing improper as to this practice and expects experts for both parties to rely on documents and statements, which they discuss as part of their testimony. The Court also agrees that it may be possible for this practice to go too far. As such, the Court **DEFERS** ruling on this Motion until the specific context of such expert testimony at trial.

5

**V.      Defendant's Motion to exclude all references to Teva's involvement in opioid litigation**

Defendant moves to prevent Plaintiff from referencing its involvement in opioid litigation. Defendant insists that the evidence is not relevant to Plaintiff's claims and will inflame and distract the jury on a controversial topic of national concern. Defendant also claims that its involvement in other litigation is inadmissible character evidence and inadmissible hearsay.

While Plaintiff does not generally contest this, Plaintiff reserves the right to argue that Defendant has opened the door to such testimony being admissible based on expert work in opioid litigation. Plaintiff also points to internal corporate documents discussing Defendant's pharmacovigilance system, generally—which concern Defendant's pharmacovigilance of the Paragard product—that also reference opioid products.

The Court agrees that Teva's involvement in opioid litigation should be excluded under Federal Rule of Evidence 403. Opioids are a hot-button issue that have impacted many families, including potential jurors. Any relevance to the issues in this case is tangential at best. To the extent that Plaintiff believes that Defendant has opened the door on this issue, Plaintiff should approach the Court outside the presence of the jury before inserting issues related to opioid litigation into the trial. In addition, the Court finds that documents discussing the pharmacovigilance system should be redacted to remove reference to opioid products. As such, Defendant's Motion is **GRANTED**.

6

**VI.     Defendant's Motion to exclude evidence or argument that Teva breached any alleged duty to test Paragard before or after placing it on the market**

Defendant moves to exclude any alleged failure to conduct pre- or post-market testing on Paragard as unsupported and irrelevant. Defendant argues that failure to test is not an independent cause of action under Florida law but is subsumed by the duty to market a safe product, so any alleged breach of that purported sub-duty must support a design or warning defect claim.

Defendant first argues that Plaintiff's expert on this issue is unqualified to testify about this issue. This argument will be addressed in response to Defendant's Daubert Motion raising these same arguments.

Defendant then argues that any alleged failure to test is irrelevant to Plaintiff's claims. As to this argument, Plaintiff argues that the Motion is overbroad and vague. Additionally, Plaintiff argues that although failure to test is not an independent cause of action, it is subsumed within Plaintiff's failure to warn, design defect claims, and punitive damages claims and evidence of Teva's failure to test is clearly relevant to those claims. Plaintiff further argues that when Defendant conducted an overdue post-market safety analysis, Defendant concluded breakage should be added as a warning in the label, and the FDA agreed. Plaintiff also contends that had Defendant conducted appropriate testing on Paragard after it was approved, Defendant could have made changes to the Paragard that would have made it less likely to break.

Although the Court agrees with Defendant that failure to test is not a cause of action under Florida law, the Court also agrees with Plaintiff that evidence of Defendant's failure to conduct pre- or post-market testing on Paragard should not be unilaterally excluded. The Court further agrees with the general concept that lack of testing may be admissible on Plaintiff's failure to warn, design defect, and punitive damages claims. As such, the Court **DEFERS** ruling on this Motion until the specific context of such evidence at trial.

## VII.     Defendant's Motion to exclude evidence or argument suggesting that Teva misrepresented information concerning Paragard to the FDA

Defendant argues that it anticipates Plaintiff may contend that Defendant failed to provide accurate data on Paragard to the FDA or otherwise failed to comply with the FDA's pharmaceutical regulations, including those relating to adverse event reporting and that this should be excluded because the theory of liability is preempted by federal law.

In response, Plaintiff first argues that the Court will address preemption issues in the Order on the specific preemption motions. Plaintiff further argues that the evidence shows that Defendant's failure to comply with certain regulations and to provide certain breakage information to the FDA are both relevant to whether the FDA knew about Paragard's breakage-related risks and whether the FDA rejected or would otherwise allow a change of the label under state law.

Defendant has indicated that it will argue at trial that the FDA approved or could have otherwise ordered a label change. Because Defendant has injected this issue in the case, Plaintiff will be allowed to address this argument by introducing evidence that Defendant's alleged misrepresentations to the FDA influenced the FDA's actions. Because the Court agrees that evidence of this nature may be admissible on Plaintiff's failure to warn, design defect, and punitive damages claims, the Court **DEFERS** ruling on this Motion until the specific context of such evidence at trial.

## VIII.    Defendant's Motion to exclude evidence of company audits or inspections that did not relate to Paragard breakage

Defendant argues that audits addressing products other than Paragard and having no connection to the specific issues in this case should be excluded. Specifically, Defendant points to an internal pharmacovigilance audit from 2008. As to this audit, Defendant contends that it occurred before Defendant acquired the Paragard New Drug Application, so the issues in the report had nothing to do with its manufacturing or marketing of Paragard.

In response, Plaintiff contends that as a general matter, any pharmacovigilance audit or inspection of Paragard's pharmacovigilance facility in Horsham, Pennsylvania is relevant to Paragard and Plaintiff's claims because it is undisputed that systems and processes originating from Horsham apply to all Teva's pharmaceutical drugs, including Paragard. Moreover, any audit or inspection that was conducted of the facility in North Tonawanda, New York,

9

where only Paragard is manufactured and where Paragard product quality complaints are routed, is by default, specific to Paragard's manufacturing and quality complaint processing systems.

Plaintiff contends that the 2008 and the 2011 audits are specifically relevant to her claims. The 2008 Horsham audit's purpose was global and not specific to any drug or device, and it notes various major, minor, and other deficiencies with respect to Teva's global pharmacovigilance system. While this audit pre-dates Defendant's acquisition of Paragard by six months, Plaintiff contends that it demonstrates Defendant's notice and knowledge of continuing and unresolved problems with its global pharmacovigilance system. Plaintiff's expert, Dr. Kessler, will testify that many of these issues and deficiencies remained constant and unresolved after Teva acquired the Paragard NDA in December 2008 and beyond. Based on these numerous and repeated deficiencies, Dr. Kessler opines that the Paragard manufacturers' quality and pharmacovigilance systems were not adequate to ensure the continued safety of Paragard.

Additionally, Defendant moves to exclude a report from Dr. Cobert who conducted an audit of Defendant's pharmacovigilance program in 2010. This report included 16 findings relating to various aspects of Defendant's adverse event monitoring systems. Dr. Cobert admitted his audit was not intended to assess whether the design or labeling for Paragard was adequate, Paragard is

mentioned only six times in Dr. Cobert's 63-page audit report, and Dr. Cobert did not make any findings or determinations related to Paragard breakage. Defendant argues that, to the extent Plaintiff intends to rely on this evidence to suggest Defendant failed to report Paragard adverse events to the FDA, that argument is preempted and none of this evidence bears any relation to the specific issues in this case.

As to Dr. Cobert's independent audit, Plaintiff claims that it was a global audit of Defendant's pharmacovigilance systems and processes and not specific to any drug or device but that it specifically mentioned Paragard. Plaintiff cites to a conclusion that is meant to cover all its pharmacovigilance systems.

Finally, Defendant moves to exclude this evidence as improper character evidence. Because the Court finds that this evidence may be otherwise admissible in other ways, the Court will not exclude it as character evidence basis. The Court agrees with Defendant that to the extent Plaintiff seeks to introduce audits of other products, which focus on different manufacturing processes, personnel, SOPs, and regulatory frameworks, Plaintiff must make a foundational showing of their relevance to the issues in dispute in this case. It is unclear from the record before the Court that Plaintiff will be unable to do so on all evidence within this broad category. As such, the Court **DEFERS** ruling on this Motion until the specific evidence is presented in the context of trial.

**IX.    Defendant's Motion to exclude any reference or implication that Donald Gee evaded service in this litigation**

Defendant argues that Plaintiff should not be permitted to argue or imply that Mr. Gee has been evading attempts to serve him. In support, Defendant contends that there is no evidence of evasion, and regardless, there is no evidence that Mr. Gee was not served because of misconduct or non-cooperation by Defendant. It appears that this Motion is unopposed. Accordingly, it is **GRANTED**. Plaintiff is prohibited from referencing her unsuccessful efforts to depose Mr. Gee.

**X.    Defendant's Motion to exclude Teva corporate documents or FDA inspection reports that postdate Plaintiff's Paragard placement**

Because Plaintiff's physician inserted her Paragard in 2012, Defendant moves to exclude all Defendant corporate documents or FDA inspection reports that postdate her Paragard placement. Defendant argues that the Court should exclude this entire category of evidence because it is irrelevant and unfairly prejudicial. Fed. R. Evid. 401, 403. The Court finds that this Motion is too vague and overly broad to be ruled upon. The Court will consider the documents in the context of trial. This Motion is **DEFERRED**.

**XI.    Defendant's Motion to exclude all references to Teva's 2013 Citizen Petition asking the FDA not to approve a generic copper IUD**

Defendant moves to exclude a Citizen Petition in which Defendant asked the FDA to refrain from approving an application for a generic copper IUD unless

certain proposed conditions were met. According to Defendant, the FDA did not respond to this Petition, and Defendant withdrew it.

Defendant objects to use of this document as irrelevant and inflammatory. Defendant specifically points to statements in the Petition where Defendant admits it does not know how Paragard works to prevent pregnancy. Defendant also argues that questions about Defendant's motive in filing the Petition and its claimed need for testing are also irrelevant.

Plaintiff's response to these arguments is unavailing, and the Court agrees that the above uses of the Petition should be excluded under Federal Rule of Evidence 403. The Court finds that getting into issues relating to the approval of a generic drug are too far afield. If Plaintiff believes that Defendant has opened the door to introducing this evidence at trial based on certain assertions about its efficacy, testing, and/or safety, counsel are to approach the bench. As to these issues, the Motion is **GRANTED**.

**XII.    Defendant's Motion to exclude evidence or argument concerning audits or FDA inspections relating to Paragard that pre-date Teva's acquisition of the Paragard New Drug Application**

Because Defendant acquired the Paragard New Drug Application in 2008, Defendant moves to exclude all evidence that pre-dates this acquisition. Defendant argues that the Court should exclude this entire category of evidence because it is irrelevant and unfairly prejudicial. Fed. R. Evid. 401, 403. The Court

finds that this Motion is too vague and overly broad to be ruled upon. The Court

will consider the documents in the context of trial. This Motion is **DEFERRED**.

**XIII.    Defendant's Motion to exclude references to foreign regulations or regulatory authorities or Teva's response to foreign regulatory requirements, including Teva's decision not to maintain a CE Mark for Paragard**

Defendant moves to prevent Plaintiff from admitting evidence about

foreign regulations or authorities, such as a consulting report addressing

compliance with European standards for placing a device registration symbol on

Paragard.

Defendant specifically points to an agreement with Lachman Consultant

Services, Inc. to evaluate whether Paragard could continue to be sold in Europe,

given the European Union requirements for a device to carry what is known as a

CE mark. Defendant claims any such evidence is irrelevant to this case, which

only involves U.S. regulations, a U.S. drug, and a U.S. plaintiff. Even if there were

any minimal probative value, Defendant argues such evidence is subject to

exclusion under Rule 403.

Plaintiff argues that the July 2009 Lachman consulting agreement and

audit is relevant and admissible, as it goes directly to Teva's specific knowledge of

breakage and its failures in pharmacovigilance, which are material to this case.

Plaintiff claims that part of the agreement shows that Lachman Consulting was

hired to assess certain aspects of Paragard operations in the United States and

that it was not limited to the purposes Defendant claims.

14

The Court agrees with Defendant that certain aspects of this report may be subject to exclusion or a limiting instruction because compliance with European standards is not at issue in this case, but the Court cannot say on this record that the document should be excluded in its entirety. It may be relevant to Defendant's knowledge of breakage and its pharmacovigilance system. As such, Defendant's Motion is **DEFERRED**.

## XIV.   Defendant's Motion to exclude evidence or argument that Plaintiff is concerned about her future reproductive health because of the Paragard

Because no healthcare provider has told Plaintiff that her Paragard breakage or removal had any impact on her reproductive health and she has not actively tried to conceive, Defendant moves to prevent Plaintiff from testifying that she has anxiety about a future loss of reproductive health. In response, Plaintiff argues that neither a healthcare provider's statement nor expert testimony is necessary or required for a woman to feel fear or anxiety about her reproductive health, particularly as it relates to a medical product breaking inside of her uterus and requiring further medical care and treatment. Plaintiff also takes issue with Defendant's summary of her testimony of her future plans to conceive. Plaintiff argues that evidence of her anxiety toward her ability to conceive is admissible toward non-economic damages of mental anguish and distress that accompany medical uncertainty.

The Court agrees with Plaintiff that it is unnecessary for a healthcare provider to inform Plaintiff that she has had an impact on her reproductive health for her to have concerns about that issue such that it may be relevant toward non-economic damages. The Court is also unpersuaded that her testimony regarding her plans to conceive is such that this testimony would be inadmissible. Accordingly, Defendant's Motion is **DENIED**.

**XV.    Defendant's Motion to exclude evidence or argument suggesting that Teva had a duty to warn Plaintiff directly about the risks of Paragard**

Defendant argues that Plaintiff should be prevented from introducing evidence or argument that Teva had a duty to warn her directly of risks associated with Paragard, and that she would not have consented to receive the Paragard if Defendant had provided her with adequate warnings. In response, Plaintiff argues that the learned intermediary doctrine does not apply here. Plaintiff also argues that certain testimony concerning her research and decision to purchase the Paragard should not be excluded on this basis.

The Court agrees with Defendant that the learned intermediary doctrine applies to Plaintiff's warning claims and that argument or evidence meant to directly contradict this legal ruling are excluded. The Court also agrees that evidence concerning how Plaintiff researched the Paragard product and made her decision to request it may provide valuable context for the issues in the case. As such, the Motion is **GRANTED in PART** to the extent that Plaintiff insists that

the learned intermediary doctrine does not apply. It is otherwise **DEFERRED** until the context of trial.

**XVI.**    **Defendant's Motion to exclude evidence or argument concerning potential injuries or interventions allegedly associated with Paragard that Plaintiff has not experienced**

Defendant moves to prevent Plaintiff's expert Dr. Ghulmiyyah from testifying about certain events that can complicate removal of a broken IUD, including the possible need for abdominal surgery (laparoscopy or laparotomy) or even hysterectomy. Defendant argues that these complications are not relevant because Plaintiff did not suffer from them. Plaintiff responds that information regarding these complications is admissible because she was informed about them before her surgery and they provide additional context to her damages, including her emotional distress damages. Plaintiff also argues that these additional complications are relevant to the failure to warn claim. Because the Court agrees that potential harms from broken IUD removals may be relevant as to emotional distress damages and the magnitude of danger in a failure to warn claim, the Court will not exclude all such complications from trial. Instead, the Court **DEFERS** ruling on this testimony until trial.

**XVII.**    **Defendant's Motion to exclude any references to the WHO/UNFPA document, "The TCu380A Intrauterine Contraceptive Device (IUD): Specification, Prequalification, and Guidelines for Procurement"**

Defendant moves to exclude any reference to what it calls the WHO/UNFPA Document, which is a guide created in 2010 by the World Health

17

Organization ("WHO"), United Nations Population Fund ("UNFPA"), and Family Health International ("FHI"). The stated purpose of the document is to provide information regarding the copper IUD that the WHO and UNFPA recommend in international aid programs, to help those programs procure copper IUDs outside the United States.

The specifications described in the WHO/UNFPA document were derived from the specifications for Paragard that were approved by the FDA, but the WHO/UNFPA has altered its specifications over time. Defendant claims that it had no role in developing the specifications for the WHO/UNFPA Document, nor has it ever participated in the WHO/UNFPA's procurement program for that product. Defendant also contends that the FDA was not involved in the creation of the WHO/UNFPA Document, nor does it approve of its use in the United States. Defendant argues that it anticipates that Plaintiff will seek to introduce this document through her experts to support the contention that its specifications are the prevailing standard by which all copper IUDs should be judged and as a regulatory standard that Defendant should have followed. Defendant argues that this is a foreign regulation that does not govern the marketing of an FDA-regulated product in the United States and is instead a procurement guide for a standardized product that lacks the force of law. Additionally, Defendant argues against Plaintiff using this document as evidence of an industry standard as the only standards at issue are FDA-approved.

In response, Plaintiff claims that Defendant is relitigating the Mays Daubert Motion, which also addresses this study as one her expert, Dr. Mays, relies upon in formulating his opinions. Plaintiff then provides more context for this study as one which investigated the root cause of Paragard breakage and concluded that some of the problems were like those alleged in this case. Dr. Mays reviewed and incorporated these findings to support his opinions.

Defendant is correct that Plaintiff cannot use this study to argue that its specifications are the prevailing standard by which all copper IUDs should be judged and/or as a regulatory standard that Defendant should have followed, and Defendant's Motion is **GRANTED in PART** as to this issue. But Defendant has not shown that this study should be entirely excluded from this case. It may be relevant for Plaintiff's expert to use as a study to explain the basis for his opinions. The Court will consider a limiting instruction if this appears confusing to the jury. The Court **DEFERS** ruling on this Motion.

## XVIII.  Defendant's Motion to exclude any references to the Miudella non-hormonal IUD

Defendant moves to exclude any reference to Miudella, a new non-hormonal copper IUD that was approved by FDA in February 2025 but is not expected to be available for use in the United States until 2026. Defendant claims that this product is irrelevant here and likely to cause confusion to the jury because 1) it was not approved until long after Plaintiff's Paragard was placed and removed; 2) none of Plaintiff's experts has discussed this product as a safer

19

alternative design to Paragard; and 3) Miudella is not currently available for physicians to prescribe. Plaintiff argues that Miudella is relevant as evidence of a safer alternative design as supported by the testimony of her design defect expert, Dr. Labib Ghulmiyyah. The Court finds that Defendant has not shown that this evidence should be excluded given that Plaintiff may be able to show that this evidence is admissible in support of her safer alternative design. As such, the Court **DEFERS** ruling on this issue until the context of trial.

## XIX.    Defendant's Motion to exclude any CooperSurgical company documents that post-date its acquisition of the Paragard New Drug Application and any company witness testimony discussing the events or issues in those documents

Because CooperSurgical, Inc. is no longer a defendant in this case, Defendant argues that Plaintiff should not be permitted to introduce any of Cooper's company documents or company witness testimony about documents that post-date its acquisition of the Paragard NDA because this evidence is not relevant to Plaintiff's claims against Defendant. Defendant argues that as a simple matter of timeliness, those statements are irrelevant and inadmissible on what Defendant knew or should have known about Paragard's risks.

In response, Plaintiff argues that Defendant's Motion is premature, vague, and overbroad and is best taken up at trial on a document-by-document and witness-by-witness basis. Plaintiff cites to various examples of Cooper documents and witness testimony that may be admissible at trial.

The Court agrees with Plaintiff. Although there are certainly Cooper documents that are not admissible because of the relevant timeline, the Court cannot say that all such evidence should be excluded. Plaintiff's response points to several such categories that would be potentially admissible at trial. As such, the Court **DEFERS** ruling on this issue and will address the specific evidence in the context of trial.

**IT IS SO ORDERED** this 5th day of January, 2026.

**Leigh Martin May**
**Chief United States District Judge**